W. W. Slaughter v. Commissioner. Pearl Slaughter (Mrs. W. W. Slaughter) v. Commissioner.
Slaughter v. Commissioner
Docket Nos. 104633, 104637.
United States Tax Court
1943 Tax Ct. Memo LEXIS 178; 2 T.C.M. (CCH) 528; T.C.M. (RIA) 43361; July 28, 1943
*178 W. W. Slaughter, pro se. W. H. Payne, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This is a consolidated proceeding to redetermine deficiencies in income tax of each of the named petitioners in the amount of $60.26 for the calendar year 1936 and $250.34 for the calendar year 1937. The deficiencies arise from certain adjustments made by respondent, correctness of all but one of which petitioners have conceded. The single remaining issue is whether respondent erred in including in community income salary and interest credited to but not received in cash by petitioner W. W. Slaughter in the taxable years. Petitioners filed separate income tax returns on the community property basis. The returns for the taxable years were filed with the collector of internal revenue for the second Texas collection district at Dallas. Findings of Fact Petitioners, W. W. Slaughter and Pearl Slaughter, were at all times material herein husband and wife domiciled in the State of Texas. Their separate tax returns were filed for the calendar years 1936 and 1937 on the cash receipts and disbursements basis. W. W. Slaughter was an officer and director of the Shield *179 Company, Inc., hereinafter called the "Company", which kept its books and filed its income tax returns on an accrual basis. During each of the calendar years 1936 and 1937, petitioner W. W. Slaughter became entitled to a salary of $10,000 from the Company, such sum being authorized by its board of directors and credited to W. W. Slaughter's account on its books. To this account was also credited $696 in each of the two years as interest on notes representing salary for prior years. Against his account W. W. Slaughter drew $250 monthly, and in addition therto made frequent but irregular withdrawals from the Company's cash drawer. W. W. Slaughter, thereby received in cash all but $687.61 of his $10,000 salary for 1936 and all but $1,584.48 of his similar 1937 salary. These balances remained accrued on the Company's books. No part of the credited interest items was withdrawn during the taxable years in question. All stock of the Company was owned equally by W. W. Slaughter, and two associates to each of whom was declared an identical salary. These three also comprisod the board of directors. As such they at no time took formal action restricting W. W. Slaughter in his withdrawals of *180 either salary or interest. At certain times the directors questioned, informally, the matter of excessive use of the cash drawer withdrawal method of receiving salary, but this did not deter the practice. The Company, generally, kept no substantial cash balance. On August 31, 1936, its bank account was overdrawn $1,483.35, but its demand deposits one year later totalled $38,773.78. Other material items pertaining to the Company's financial condition on August 31, 1936 and August 31, 1937, as shown by its balance sheet, are as follows: Aug. 31,
Aug. 31,
1936
1937
Notes and Accounts re-
ceivable and Fin. Pa-
per
$117,940.40
$ 65,406.59
Inventories
62,017.96
100,855.53
Capital Assets
5,828.70
35,473.30
Total Assets
205,505.67
265,504.33
Notes Payable
75,600.00
124,600.00
Accounts Payable
5,009.22
23,384.11
Officers Accounts
18,158.07
30,197.14
Capital Stock
6,000.00
6,000.00
Earned Surplus
64,188.91
63,353.93
The Company's total sales for its fiscal years ended August 31, 1936 and August 31, 1937, were, respectively, $401,779.40 and $ 386,175.85. Opinion In determining the disputed deficiencies respondent included as community income to petitioners *181 salary and interest credited to petitioner, W. W. Slaughter, on the Company's books during the taxable years but not received by him in cash. These credited amounts were treated as income under the doctrine of constructive receipt, on the ground that they "were not restricted in any way as to time, manner or condition as to payment." Petitioners assigned this as error contending that salary payments and interest items credited to W. W. Slaughter's account during the years in question were restricted due to the financial condition of the Company. On this, issue was joined. Petitioner W. W. Slaughter, though admitting he had nothing to do with the Company's books, testified that he did not believe the cash position of the Company was ever such as to have enabled it to pay the balances in a lump sum. This circumstance, even if so, and its existence must be questioned in view of the Company's balance sheet of August 31, 1937, showing demand deposits exceeding $38,000, is not in itself controlling. The fact of dominant significance in determining the Company's ability to pay salaries and other accounts currently is its over-all financial condition. The amount of cash on hand and the character *182 of its investments are important only as factors affecting such over-all financial condition. Its balance sheets for the fiscal years ended August 31, 1936 and August 31, 1937, each show an earned surplus of over $60,000. Inventories were substantial. There can be no question of the solvency of the Company. During the two years in question, the total salary and interest credited to W. W. Slaughter but unpaid in cash amounted to only $3,664.09. This sum is picayune as compared to the Company's surplus or the volume of its business. Its payment would not detrimentally affect the Company's financial position or cause perceptible curtailment in its operations. Cf. . Moreover, assuming that the Company, as a general practice, carried only a small cash balance, this course was pursued as a result of its directors' own choosing. And petitioner W. W. Slaughter was one of the three directors and owned one-third of the Company's capital stock. It must be assumed that his influence over corporate activities and business practice was, at least, commensurate with his interest in the Company. Had W. W. Slaughter seen fit to do so, he might *183 have insisted upon full payment of his salary and interest account in cash in lieu of the use of a similar amount to increase inventory, purchase fixed assets or make loans. In view of the equality between W. W. Slaughter and his two associates, as evidenced by their identical stock interests and salaries, it is doubtful that his wishes would have been disregarded. Not only dooes the record fail to disclose inability of the company to make or of W. W. Slaughter to obtain full cash payments of credited salary and interest but the contrary clearly appears. The record shows that Slaughter drew on his salary account to the extent of his current personal requirements and voluntarily permitted the Company to use in its business the amount representing the excess thereof pending its withdrawal at Slaughter's will. This is apparent as a consequence from the rather unique method by which Slaughter drew his compensation. In 1936 he received in cash $9,312.39 of his $10,000 salary. Of this amount $6,312.39 was obtained through "hitting the cash drawer," i.e., frequent withdrawals of small sums in varying amounts from the cash drawer, leaving a slip to evidence each payment. Such withdrawals *184 were made whenever it suited Slaughter's needs or convenience and, presumably, had his needs been greater the withdrawals would have increased accordingly, at least to the extent of his credit on the Company's books. Since a major part of his salary was procured in this informal fashion, we think it follows that he could have, in the same manner, obtained the relatively small balance of his salary for 1936 as well as the interest item of $696, had he chosen to do so. The same must be said for the 1937 balances. As we said in the case of , It was not that the corporation would not pay, but that he would not receive. This election to give the corporation the temporary use of the amount is an exercise by him of its enjoyment, and this is one of the primary attributes of income. No claim is made that payment of the credited salary and interest items was restricted or limited at any time by action of the directors. Cf. . Nor was there any agreement between the stockholders which conditioned these payments. Cf. . *185 The informal talks regarding withdrawals from the cash drawer can not be regarded as such, especially since the parties continued the practice as before. In the absence of restrictions imposed by resolution of directors or agreement of the parties and since petitioners have failed to substantiate with evidence their contention that the Company was financially unable to pay the full amount of the credited salaries and interest items, we are compelled to conclude that the amounts thereof credited to petitioner W. W. Slaughter but not paid to him in cash were constructively received by him in the years credited. ; ; . We perceive no error in respondent's determination of deficiencies in petitioners' income tax for the years 1936 and 1937. Accordingly, the deficiencies are approved as found by respondent. Decisions will be entered for respondent.